UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

TRAVERS A. GREENE,

                    Petitioner,

v.

WILLIAM GITTERE, *et al.*,

                    Respondents.

Case No. 2:07-cv-00304-MMD-DJA

ORDER

## I.   SUMMARY

This action is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by Travers A. Greene, who is under sentence of death and incarcerated at Nevada's Ely State Prison. Before the Court is Respondents' motion to dismiss (ECF No. 129 ("Motion")) and Greene's related motions for leave to conduct discovery and for an evidentiary hearing (ECF Nos. 164, 167). In the Motion, Respondents assert that certain claims in Greene's second amended habeas petition are barred by the statute of limitations, unexhausted, procedurally defaulted, unripe, and not cognizable. As explained further below, the Court will grant the Motion in part and deny it in part, will dismiss certain of Greene's claims, and will deny Greene's motions for leave to conduct discovery and for evidentiary hearing.

## II.   BACKGROUND

Greene's conviction and sentences, at issue in this case, are for the murders of Deborah Farris and Christopher Payton in Clark County, Nevada, on September 23, 1994. In its opinion on Greene's direct appeal, the Nevada Supreme Court described the factual background of the case as follows:

> In the early morning hours of September 23, 1994, appellants Travers Arthur Greene and Leonard Arthur Winfrey drove to Sunrise Mountain in a stolen blue Camaro, armed with stolen weapons, an M-14 assault rifle and

a handgun. They intended to experiment with the rifle to see how big a hole it would make when fired at something. Upon reaching the top of Sunrise Mountain, they spotted a powder blue Volkswagen with Deborah Farris and Christopher Payton sleeping beside it. Winfrey drove the Camaro up to the Volkswagen and stopped, shining the headlights on Farris and Payton. Armed with the assault rifle, Greene immediately exited the Camaro and shot Payton in the head. Greene then attempted to shoot Farris, but the assault rifle jammed. While Greene tried to unjam the rifle, Farris began pleading for her life, crying "please don't do this." Meanwhile, Winfrey, who was monitoring the situation from the car, exited the vehicle, pointed the handgun at Farris and pulled the trigger. However, the handgun also malfunctioned, and no bullet discharged. At this point, Farris continued to plead with Greene and Winfrey not to kill her. Shortly thereafter, Greene succeeded in fixing the assault rifle, pointed it at her head and shot her in the neck, saying "shut up, bitch."

Heather Barker witnessed these killings while seated in the Camaro. Barker had been at Winfrey's apartment earlier that evening, and Greene and Winfrey had promised to give her a ride home. After the first shot was fired, Barker said to Winfrey, "oh, my God, did he shoot somebody, I want to go home." Barker also heard a female voice saying, "please don't do this, you could take anything, you could take my car, just please don't do this." Barker was a friend of Winfrey's but had not met Greene until that evening.

After the killings, [Greene] and Winfrey got back into the Camaro. As they were driving away, Greene laughed about how it looked when the eyeballs popped out of Payton's head. He also derisively talked about how the blood bubbled out of Farris's neck when he shot her.

After leaving Sunrise Mountain, Winfrey drove to Barker's house and Greene cleaned the assault rifle in her bathroom. The three then went to Winfrey's apartment where they had met earlier that evening. Greene left in the car, Winfrey went up to his bedroom to sleep, and Barker walked home.

The next day, Phil Souza, Winfrey's roommate, noticed that Winfrey acted as if something was bothering him. When the eleven o'clock news showed a story about two people being killed on Sunrise Mountain, Winfrey became upset and began banging his head on the ground. Approximately 45 minutes later, Greene arrived, and Souza overheard Greene say, "they found the bodies," and "we are not through yet." Winfrey made no statement regarding what had happened. The following day Souza approached a policeman on the street and told him what he had observed.

This information led to the investigation of both Greene and Winfrey and their subsequent arrest for the murders of Farris and Payton. On September 25, 1994, Greene and Winfrey were each charged by way of Information with: one count of conspiracy to commit murder; two counts of murder with use of a deadly weapon; and one count of possession of a stolen vehicle.

The State filed notice to seek the death penalty against both defendants, alleging the following circumstances: (1) the murder was committed to avoid or prevent a lawful arrest or to effect an escape from custody, NRS 200.033(5); (2) the murder was committed upon one or more persons at random and without apparent motive, NRS 200.033(9); (3) the defendant has, in the immediate proceeding, been convicted of more than one offense of murder in the first or second degree, NRS 200.033(12).

2

[Footnote: Effective October 1, 1995, the "more than one offense" aggravating circumstance was renumbered from NRS 200.033(10) to NRS 200.033(12). All further references to this statutory section will be to NRS 200.033(12).]

The first jury trial was conducted jointly with Greene and Winfrey as co-defendants. However, due to incurable *Bruton* issues, the district court granted a mistrial to Greene. Thereafter, the first jury trial continued against Winfrey alone, and a second separate jury trial commenced against Greene. Both Greene and Winfrey were convicted of all charges.

Greene and Winfrey each had separate penalty hearings. Against Greene, the jury found the following aggravators for both killings: (1) the murder was committed upon one or more persons at random and without apparent motive, NRS 200.033(9); and (2) the defendant has, in the immediate proceeding, been convicted of more than one offense of murder in the first degree, NRS 200.033(12). Against Greene, the special verdicts reflect that the jury also found the following mitigating circumstances: (1) youth of the defendant at the time of the crime; and (2) any other mitigating circumstances to exist in this case. The jury determined that the aggravators outweighed the mitigators and consequently returned a death verdict against Greene. Greene was sentenced to death for both murder counts, six years for conspiracy to commit murder, a consecutive ten years and restitution of $1,000 for possession of a stolen vehicle.

*Greene v. State*, 931 P.2d 54, 57-58 (Nev. 1997) (a copy of the opinion is found in the record at ECF No. 43-3 at 9-34).

Greene appealed (*see* ECF Nos. 42-4 and 42-5 (opening brief), 42-8 (reply brief)), and on January 4, 1997, the Nevada Supreme Court affirmed. *See Greene v. State*, 931 P.2d 54 (Nev. 1997). The Nevada Supreme Court denied rehearing on May 20, 1998. (ECF No. 43-2 at 11.) The remittitur was issued on May 28, 1998. (ECF No. 43-4 at 2.)

Greene filed a *pro se* petition for writ of habeas corpus in the state district court on May 26, 1998. (ECF No. 43-3).) Counsel was appointed, and, with counsel, Greene amended his petition on March 2, 2000. (ECF No. 43-12 at 24-28.) Greene filed a supplement to his amended petition on July 6, 2001. (ECF Nos. 44-2, 44-3, 44-4, 44-5, 44-6, 44-7, 44-8.) After an evidentiary hearing (ECF Nos. 45-5, 45-6), the state district court denied Greene's petition in a written order entered February 8, 2005. (ECF No. 45-8 at 5-29.) Greene appealed (*see* ECF Nos. 47-2, 47-3 and 47-4 (opening brief), 50-6 (reply brief)), and the Nevada Supreme Court affirmed on November 14, 2006. (ECF No. 50-7 at 2-24). The Nevada Supreme Court denied en banc reconsideration on March 1,

1   2007. (ECF No. 50-9 at 17-18.) The remittitur was issued March 1, 2007. (ECF No. 50-9
2   at 20.)

3       Greene initiated this federal habeas corpus action by filing a pro se petition for writ
4   of habeas corpus on March 9, 2007. (ECF No. 1.) After counsel was appointed (ECF No.
5   4), Greene filed a first amended habeas petition on February 6, 2008. (ECF No. 16.)
6   Respondents filed a motion to dismiss on July 1, 2008 (ECF No. 28). Greene then filed a
7   motion for leave to conduct discovery on July 31, 2008 (ECF No. 52), and a motion for
8   stay on August 4, 2008 (ECF No. 65). In the motion for stay, Greene requested that this
9   action be stayed to allow him to further exhaust claims in state court. On February 6,
10  2009, the Court granted the motion for stay and stayed this action pending further state-
11  court proceedings, and the Court denied the motion to dismiss and the motion for leave
12  to conduct discovery. (ECF No. 77.)

13      Greene filed a second state habeas petition on February 28, 2008. (ECF No. 130-
14  3.) The state district court conducted an evidentiary hearing (ECF Nos. 120-17, 120-18),
15  and then denied the petition, on state-law procedural grounds, on March 29, 2010. (ECF
16  No. 157-14.) Greene appealed (*see* ECF No. 111-1 (Greene's opening brief), 111-3
17  (Greene's reply brief)), and the Nevada Supreme Court affirmed on June 24, 2016. (ECF
18  No. 111-4.) The Nevada Supreme Court denied rehearing on October 21, 2016. (ECF
19  No. 111-6.) The United States Supreme Court denied certiorari on June 19, 2017. (ECF
20  No. 111-7.) The remittitur was issued on June 23, 2017. (ECF No. 111-8.)

21      On January 10, 2017, during the stay of this action, Greene filed a motion to
22  temporarily lift the stay to supplement his petition with a claim based on *Hurst v. Florida*,
23  577 U.S. 92 (2016). (ECF No. 99.) Greene filed his proposed new claim with that motion.
24  (ECF No. 100.) The Court granted the motion on March 22, 2017, and ordered that
25  Greene's *Hurst* claim would be considered added to his habeas petition. (ECF No. 102.)

26      Also on January 10, 2017, Green filed a third state habeas petition, asserting, in
27  state court, his claim based on *Hurst*. (ECF No. 158-19.) The state district court granted
28  a motion to dismiss and dismissed that petition on October 2, 2017. (ECF No. 158-26.)

Greene appealed (*see* ECF Nos. 111-9 (opening brief), 111-11 (reply brief)), and the Nevada Supreme Court affirmed on September 13, 2019. (ECF No. 111-12.) The remittitur was issued on October 9, 2019. (ECF No. 111-13.)

The stay of this case was lifted, upon a motion by Greene, on December 6, 2019. (ECF No. 113.) On May 6, 2020, Greene filed a second amended habeas petition, which is now his operative petition. (ECF No. 119.) The Court reads Greene's second amended petition to assert the following claims:

> 1.    Greene's federal constitutional rights were violated because of ineffective assistance of trial counsel.
>
>> A.    Greene's trial counsel were ineffective for failing to investigate Greene's life history.
>>
>> B.    Greene's trial counsel were ineffective for failing to evaluate Green's mental health.
>>
>> C.    Greene's trial counsel were ineffective for failing to present evidence that Greene's mental health problems and drug intoxication constituted a defense to the crime of first-degree murder.
>>
>> D.    Greene's trial counsel were ineffective for failing to present evidence of Greene's life history and mental health problems as mitigation at the penalty phase of his trial.
>>
>> E.    Greene's trial counsel were ineffective for failing to explain Greene's gang involvement and his involvement with Anthony Fisher, for failing to impeach witness Phil Souza's testimony by inquiring about his drug use, for failing to impeach witness Kristey Dentler by inquiring about her drug use, and by failing to impeach witness Anthony Fisher by inquiring about his drug use and his manipulation of Greene.
>
> 2    Greene's federal constitutional rights were violated because of his youth and because of the prosecution's use of his delinquent juvenile behavior as a non-statutory aggravating factor during the penalty phase.
>
>> A.    The prosecution used Greene's delinquent juvenile behavior as a non-statutory aggravating factor during the penalty phase.
>>
>> B.    It is unconstitutional to impose the death penalty on late adolescent offenders.
>>
>> C.    Greene's trial counsel were ineffective for failing to move to exclude evidence of his delinquent juvenile behavior and for failing to present evidence that he functioned at a lower level than his chronological age.

5

3      Greene's federal constitutional rights were violated because of the prosecution's failure to disclose material exculpatory and impeachment information, and presentation of false testimony, related to benefits that were promised to, and conferred upon, witness Anthony Fisher.

4.      Greene's federal constitutional rights were violated because he is actually innocent of murder.

5.      Greene's federal constitutional rights were violated because the offense of first-degree murder, as interpreted by the Nevada Supreme Court and defined by the jury instructions, was unconstitutionally vague, and the jury instructions relieved the prosecution of proving every element of the offense.

6.      Greene's federal constitutional rights were violated because of prosecutorial misconduct.

A.      The prosecution committed misconduct in argument.

B.      The prosecution committed misconduct by eliciting improper evidence.

C.      The prosecution committed misconduct by failing to disclose material exculpatory and impeachment evidence regarding witness Anthony Fisher.

7.      Greene's federal constitutional rights were violated because the random and without apparent motive aggravating circumstance is unconstitutional.

A.      The random and without apparent motive aggravating circumstance is unconstitutionally vague.

B.      The random and without apparent motive aggravating circumstance is unconstitutional as applied in this case.

C.      The random and without apparent motive aggravating circumstance has the effect of shifting the burden of proof; it burdens the defendant's right to present a defense at trial; it burdens the defendant's right against self-incrimination; it punishes the absence of a motive; and it provides no rational basis for distinguishing between those offenders who deserve the death penalty and those who do not.

8.      Greene's federal constitutional rights were violated because of the trial court's refusal to allow impeachment of witness Heather Barker.

9.      Greene's federal constitutional rights were violated because of the admission of gruesome photographs into evidence.

10.      Greene's federal constitutional rights were violated because of the wrongful administration of antipsychotic medication to him.

6

A.     Greene   was   wrongfully   administered antipsychotic medication prior to and during his trial and sentencing.

B.     Greene's trial counsel were ineffective in handling the matter of the administration of antipsychotic medication to Greene.

11.    Greene's federal constitutional rights were violated because of errors that occurred in jury selection.

A.     Pre-trial publicity deprived Greene of a fair trial.

B.     The manner in which the trial court conducted juror voir dire, and the trial judge's questioning and comments, tainted prospective jurors, lacked uniformity, negated the value of the juror questionnaires, and deprived Greene of a fair trial.

C.     Greene's trial counsel were ineffective for failing to challenge several biased jurors for cause.

D.     Greene's trial counsel were ineffective for failing to ensure the voir dire process resulted in a constitutionally adequate jury panel.

E.     Greene's trial counsel were ineffective for failing to make appropriate challenges to jurors based on *Batson v. Kentucky*, 476 U.S. 79 (1986).

F.     Greene's trial counsel were ineffective for failing to move for a change of venue.

12.    Greene's federal constitutional rights were violated because of ineffective assistance of his appellate counsel on his direct appeal.

A.     Greene's appellate counsel was ineffective for failing to assert all the claims asserted in this petition.

B.     Greene's appellate counsel was ineffective for serving as Greene's sole attorney on his direct appeal.

13.    Greene's federal constitutional rights were violated because of the cumulative effect of the errors described in this petition.

14.    Greene's federal constitutional rights were violated because of the absence of a jury instruction defining the standard of proof as beyond a reasonable doubt in the weighing stage of Greene's penalty hearing.

15.    Greene's federal constitutional rights were violated because Greene's trial, sentencing, direct appeal, and post-conviction proceedings were conducted before elected state court judges.

16.    Greene's federal constitutional rights were violated because his execution by lethal injection would violate the constitutional prohibition against cruel and unusual punishment.

1

        A.     Execution by lethal injection is unconstitutional in all circumstances.

2

3

        B.     Execution by lethal injection, as it would be carried out in Nevada, is unconstitutional.

4

(*Id.*)

5

6

7

8

9

10

11

     On March 9, 2021, Respondents filed their motion to dismiss (ECF No. 129), arguing that certain of Greene's claims are barred by the statute of limitations, unexhausted in state court, procedurally defaulted, uncognizable in federal habeas, and unripe. Greene filed an opposition to the Motion (ECF No. 162), and Respondents filed a reply (ECF No. 172). With his opposition, Greene filed a motion for leave to conduct discovery (ECF Nos. 164) and a motion for evidentiary hearing (ECF No. 167). Those motions have been fully briefed as well. (ECF Nos. 173, 174, 177, 178.)

12

**III.    DISCUSSION**

13

    **A.    Greene's Gateway Claim of Actual Innocence**

14

15

16

     In his opposition to the Motion, Greene argues that he is actually innocent of first-degree murder and that his actual innocence excuses any procedural bars of his claims, including any procedural default and any statute of limitations bar. (ECF No. 162 at 6-44.)

17

18

19

20

21

22

23

24

25

26

27

28

     A petitioner can overcome the procedural default, or a statute of limitations bar, by showing that he is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (application to procedural default); *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (application to statute of limitations bar). To make such a showing, the petitioner must establish factual innocence of the crime, and not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). The petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Taking into account all the evidence, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327); *see also Schlup*, 513 U.S. at 329 ("[A] petitioner does not meet the threshold requirement unless

1    he persuades the district court that, in light of the new evidence, no juror, acting

2    reasonably, would have voted to find him guilty beyond a reasonable doubt."); *House v.*

3    *Bell*, 547 U.S. 518, 538 (2006) (regarding evidence to be considered). "Based on this total

4    record, the court must make a 'probabilistic determination about what reasonable,

5    properly instructed jurors would do.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S.

6    at 329). "The Court's function is not to make an independent factual determination about

7    what likely occurred, but rather to assess the likely impact of the evidence on reasonable

8    jurors." *Id.* Meeting this standard "raise[s] sufficient doubt about [the petitioner's] guilt to

9    undermine confidence in the result of the trial without the assurance that the trial was

10   untainted by constitutional error," warranting "a review of the merits of the constitutional

11   claims[.]" *Schlup*, 513 U.S. at 317.

12        Greene argues that he has new evidence showing that he did not harbor the *mens*

13   *rea* necessary for first degree murder. (*See* ECF No. 162 at 8-14, 36-37.) Greene argues

14   his "actions were not willful, deliberate, premeditated, or the result of malice

15   aforethought—that he lacked these required mental states is evident based on a multitude

16   of factors: his brain was in the throes of a serious, acute drug intoxication, was

17   compromised as a result of the powerful, lingering effects of chronic methamphetamine

18   abuse over the last several months, was compromised by severe insomnia, and had

19   suffered significant deleterious effects on the structure and function of the control centers

20   of the brain as the result of chronic childhood trauma and resulting lasting psychiatric

21   effects." (*Id.* at 12.) Greene argues: "In light of this new evidence, under the totality of the

22   record, any and all reasonable jurors would have at least reasonably doubted whether

23   Mr. Greene premeditated and deliberated this offense as opposed to a mere rash and

24   unconsidered impulse." (*Id.* at 20; *see also id.* at 31.) Greene also argues that his "mind

25   was in a state of insanity, negating the possibility that he formed the requisite mens rea

26   for murder." (*Id.* at 37.) In support of his claim of actual innocence, Greene relies upon

27   the reports of four experts produced after his trial: a December 26, 2007, report of

28   psychologist Jethro W. Toomer, Ph.D. (ECF No. 20 at 2-14); a January 23, 2008, report

1   of neuropharmacologist Jonathan J. Lipman, Ph.D. (*id.* at 16-39); a March 26, 2020,

2   report of psychologist Matthew Mendel, Ph.D. (ECF No. 120-21); and an April 20, 2020,

3   report of psychiatrist Eric Arzubi, M.D. (ECF No. 120-22). (*See* ECF No. 162 at 6-44.)

4        In their reply to Greene's opposition to the Motion, Respondents focus on the

5   question whether Greene's attempted showing of innocence would be a showing of

6   factual innocence, as is required, or a showing of legal innocence, which cannot satisfy

7   the *Schlup* standard. (*See* ECF No. 172 at 6-8.) Respondents cite an opinion of the Tenth

8   Circuit Court of Appeals, *Beavers v. Saffle*, 216 F.3d 918 (10th Cir. 2000), in which that

9   court ruled as follows:

> Nor can Mr. Beavers demonstrate that a fundamental miscarriage of justice would occur if his claim is procedurally barred. To meet this test, a criminal defendant must make a colorable showing of factual innocence. *See Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). "The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime.... [Or where] it is evident that the law has made a mistake.'" *Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995) (citation omitted). Mr. Beavers does not claim that he is innocent of killing Raymond Matthews. Rather, he claims that he is not guilty of first degree murder because he was intoxicated and acted in self defense. However, these arguments go to legal innocence, as opposed to factual innocence. *See id.*; *see also Brecheen v. Reynolds*, 41 F.3d 1343, 1357 (10th Cir. 1994). Having failed to show sufficient reason for his failure to seek direct appeal, Mr. Beavers' claim of involuntary plea based on alleged threats is procedurally barred and we will not hear it for the first time on habeas.

19   216 F.3d at 923. There are district court rulings in the Ninth Circuit to the same effect.

20   *See*, *e.g.*, *Miranda v. Pfeiffer*, Case No. 2:19-cv-06050-FMO-KES, 2020 WL 2043611, at

21   *3 n.2 (C.D. Cal. Feb. 11, 2020) ("A claim of insufficient evidence to prove intent is not a

22   claim of actual innocence."), *report and recommendation vacated on other grounds*,

23   *Miranda v. Pfeiffer*, 2020 WL 7059604 (C.D. Cal. Sept. 30, 2020); *Dun v. Fisher*, Case

24   No. 2:19-cv-01781 MCE GGH P, 2019 WL 7370417, at *6 (E.D. Cal. Dec. 31, 2019) ("A

25   reduction of a crime to a lesser offense does not qualify as factual, actual innocence.");

26   *Jackson v. Calderon*, Case No. CV91-4249-R, 1997 WL 855516, at *67 (C.D. Cal. Nov.

27   14, 1997) ("The claim in the instant case is distinguishable from the authority relied upon

28   by Jackson, as he is not claiming that he is factually innocent of the murder, but rather

that he was incapable of forming the requisite criminal intent for the commission of capital murder."). This Court agrees that a claim that a petitioner did not harbor the requisite criminal intent for first-degree murder, despite strong evidence that he committed the killing, is, within the meaning of *Schlup*, a claim of legal innocence rather than factual innocence.

But putting aside the question of the distinction between factual and legal innocence, the Ninth Circuit Court of Appeals has held that the kind of evidence proffered by Greene is insufficient to establish actual innocence. *See Boyde v. Brown*, 404 F.3d 1159, 1167-69 (9th Cir. 2005); *Griffin v. Johnson*, 350 F.3d 956, 965 (9th Cir. 2003), *cert. denied*, 541 U.S. 998 (2004).

In *Boyde*, the habeas petitioner claimed that newly developed evidence in the form of an affidavit of a psychiatrist showed him to be actually innocent because, as a result of neurological, emotional and psychological impairments, he lacked the capacity to control or premeditate his actions or to form the required criminal intent for commission of capital murder. *See* 404 F.3d at 1168. The Court of Appeals ruled:

> To support his claim, Boyde points to Dr. Woods's affidavit, which indicates that, as a result of psychological trauma in his childhood, Boyde experiences "disassociation," an "immediate psychological response to an intolerable experience" in which an individual "'dis-associate[s]' the normally integrated aspects of the consciousness, including functions such as memory, perception, motivation, and judgment" (alteration added). Woods notes that disassociation can lead to "behavior which is sudden, unpremeditated and uncharacteristic of the individual," and concludes that, at the time of his crimes, Boyde was "in a depressed, dissociated state that precluded him from appreciating the nature and gravity of his actions."
>
> This affidavit is insufficient to establish Boyde's innocence. "Because psychiatrists disagree widely and frequently on what constitutes mental illness, a defendant could ... always provide a showing of factual innocence by hiring psychiatric experts who would reach a favorable conclusion." *Harris v. Vasquez*, 949 F.2d 1497, 1515 (9th Cir. 1990) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 81, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)) (internal quotation marks omitted). Accordingly, "it is clear that the mere presentation of new psychological evaluations ... does not constitute a colorable showing of actual innocence." *Id.* at 1516; *see also Griffin v. Johnson*, 350 F.3d 956, 965 (9th Cir. 2003). We therefore reject Boyde's actual innocence claim.

*Id.* at 1168-69; *see also Mills v. Hill*, Case No. 05-1775-AA, 2008 WL 1882840, at *3 (D. Or. April 22, 2008) (following *Boyde*).

1      Similarly, in *Griffin*, a habeas petitioner claimed actual innocence of murder, and

2  offered an evaluation by a psychologist who opined that a mental defect interfered with

3  the petitioner's ability to form the specific intent necessary for murder. *See* 350 F.3d at

4  964-65. The Court of Appeals ruled:

5          Dr. Stanulis's evaluation, however, is not sufficiently compelling to justify
           the conclusion that Griffin's conviction would constitute a miscarriage of
6          justice. "Because psychiatrists [let alone psychologists] disagree widely and
           frequently on what constitutes mental illness," we have observed that
7          evaluations such as Dr. Stanulis's merit little weight on habeas review
           because "a defendant could ... always provide a showing of factual
8          innocence by hiring psychiatric experts who would reach a favorable
           conclusion." *Harris v. Vasquez*, 949 F.2d 1497, 1515 (9th Cir.1990) (internal
9          quotation marks and citation omitted). For this reason, we have stated that
           "it is clear that the mere presentation of new psychological evaluations ...
10         does not constitute a colorable showing of actual innocence." *Id.* at 1516.

11  *Id.* at 965.

12      This Court follows *Boyde* and *Griffin* and concludes that Greene does not make a

13  colorable claim of actual innocence, under *Schlup* and *McQuiggin*, to overcome

14  procedural defaults or statute of limitations bars of his claims.

15      **B.    Statute of Limitations**

16          **1.    Legal Standards**

17      The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted in 1996,

18  established a one-year statute of limitations for federal habeas petitions filed by prisoners

19  challenging state convictions or sentences; the statue provides:

20          (1) A 1-year period of limitation shall apply to an application for a writ
           of habeas corpus by a person in custody pursuant to the judgment of a State
21         court. The limitation period shall run from the latest of --

22              (A) the date on which the judgment became final by the
               conclusion of direct review or the expiration of the time for
23             seeking such review;

24              (B) the date on which the impediment to filing an
               application created by State action in violation of the
25             Constitution or laws of the United States is removed, if the
               applicant was prevented from filing by such State action;
26
               (C) the date on which the constitutional right asserted
27             was initially recognized by the Supreme Court, if the right has
               been newly recognized by the Supreme Court and made
28             retroactively applicable to cases on collateral review; or

12

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. 2244(d)(1). The AEDPA statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. *See* 28 U.S.C. § 2244(d)(2).

### 2. Expiration of the Limitations Period in this Case

Greene's conviction became final on August 18, 1998, which was 90 days after the Nevada Supreme Court denied his petition for rehearing of his direct appeal on May 20, 1998 (ECF No. 43-2 at 11). *See Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999) ("We hold that the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. Therefore, when a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires.").

Greene filed his first state habeas petition on May 26, 1998 (ECF No. 43-3), tolling the AEDPA limitations period under 28 U.S.C. § 2244(d)(2). Therefore, the AEDPA limitations period was tolled from the time Greene's conviction became final on August 18, 1998, until March 1, 2007, when the Nevada Supreme Court denied Greene's petition for en banc reconsideration of the appeal in his first state habeas action (ECF No. 50-9 at 17–18) and that court's remittitur was issued (ECF No. 50-9 at 20).

The AEDPA limitations period relative to Greene's federal habeas petition began to run on March 1, 2007, and it ran out on March 1, 2008. This much appears to be undisputed. (*See* ECF No. 129 at 15-16 (Respondents' assertion that the limitations period ran out on March 1, 2008), ECF No. 162 at 46 n.9 (Petitioner agreeing that statutory tolling ended on March 1, 2007).)

In this action, Greene filed his original habeas petition on March 9, 2007 (ECF No. 1), and he filed his first amended habeas petition on February 6, 2008 (ECF No. 16).

Those petitions were timely filed within the AEDPA limitations period. However, Greene's second amended petition was not filed until May 6, 2020, long after the AEDPA limitations period expired.

Therefore, absent a showing that the limitations period for a particular claim commenced to run on a later date under 28 U.S.C. §§ 2244(d)(1)(B), (C) or (D), the application of the statute of limitations to the claims in Greene's second amended petition turns on the question whether those claims relate back to Greene's original or first amended petition. In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court held that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order," but "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." 545 U.S. at 650, 664.

### C.    Exhaustion of State Court Remedies

####    1.    Legal Standards

A federal court may not grant relief on a habeas corpus claim not exhausted in state court. 28 U.S.C. § 2254(b). The exhaustion doctrine is based on the policy of federal-state comity, and is designed to give state courts the initial opportunity to correct alleged constitutional deprivations. *See Picard v. Conner*, 404 U.S. 270, 275 (1971). To exhaust a claim, a petitioner must fairly present that claim to the State's highest court and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). The "fair presentation" requirement is satisfied when the claim has been presented to the highest state court by describing the operative facts and the legal theory upon which the federal claim is based. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir.1982), *cert. denied*, 463 U.S. 1212 (1983). To fairly present a federal constitutional claim to the state court, the petitioner must alert the court to the fact that he asserts a claim under the United States Constitution. *Hiivala v. Wood*, 195 F.3d

1098, 1106 (9th Cir.1999), *cert. denied*, 529 U.S. 1009 (2000), citing *Duncan*, 513 U.S. at 365-66.

### 2.    Effective State Corrective Processes

Citing 28 U.S.C. § 2254(b)(1)(B), Greene argues that "[t]o the extent [he] presents new, material evidence to this Court he attempted to present to the state courts but was unable to do so because the State's corrective process was ineffective, his claims are unexhausted but excused from the exhaustion requirement." (ECF No. 162 at 61.) Furthermore, regarding procedural default issues, Greene argues that "to the extent that [his] claims are unexhausted by the new evidence presented in his federal second amended petition but are now subject to procedural default due to the state court's unlawful refusal to permit him to factually develop and litigate these new claims during his state habeas proceedings, he is also excused from procedural default." (*Id.* at 63; *see also id.* at 86-87.)

But Greene's argument has no bearing on the claims dismissed on procedural default grounds in this order. The claims ruled procedurally defaulted and dismissed— Claims 2A, 2B, 4, 6A (in part), 11A, 11B, 12A (in part) and 12B—are claims that were not raised in Greene's first state habeas action, and that were then ruled procedurally barred, in their entirety, in Greene's second state habeas action; these are not claims raised in state court, but on which the state courts arguably prevented adequate factual development. Indeed, Greene does not attempt to relate his argument that the state courts provided ineffective corrective process to any of the claims dismissed in this order. (*See* ECF No. 162 at 60-87.)

### 3.    Exhaustion by Incorporation of Claims in Cumulative Error Claim on Appeal in Second State Habeas Action

Greene argues that, in his second state habeas action, all claims included in his petition in that action were effectively presented to the Nevada Supreme Court on appeal, and therefore exhausted on that appeal, because they were all incorporated into his cumulative error claim. (ECF No. 162 at 87-89.) This argument, as well, has no bearing

on any of the claims dismissed as procedurally defaulted. Again, the claims dismissed as procedurally defaulted in this order are ruled procedurally defaulted because they were not raised in Greene's first state habeas action, and then were ruled procedurally barred, in their entirety, in his second state habeas action. The procedural default of the dismissed claims does not turn on the question of exhaustion of the claims in Greene's second state habeas action. Moreover, here again, Greene does not attempt to relate this argument to any of the claims dismissed in this order as procedurally defaulted. (See ECF No. 162 at 87-89.)

### 4.   Anticipatory Default

The Supreme Court has recognized that under certain circumstances it may be appropriate for a federal court to anticipate the state-law procedural bar of an unexhausted claim, and to treat such a claim as subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

In light of the procedural history of this case, and, in particular, the rulings of the state courts in Greene's second state habeas action, it is plain that Greene's unexhausted claims would be ruled procedurally barred in state court if Greene were to return to state court to attempt to exhaust those claims. Therefore, the anticipatory default doctrine applies, and the Court considers Greene's unexhausted claims to be technically exhausted, but subject to the procedural default doctrine. *See Dickens*, 740 F.3d at 1317.

### D.   Procedural Default

#### 1.   Legal Standards

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the State's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *See* 501 U.S. at 731-32 ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the

State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman*, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. *Martinez*, 566 U.S. at 15 (citing *Coleman*, 501 U.S. at 746-47). The *Martinez* Court, however, "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* at 8.

///

## 2. Adequacy of the State Procedural Bars

Greene argues that the state procedural rules applied to bar his claims in state court were not adequate to support application of the procedural default doctrine. (ECF No. 162 at 126-41.)

A state procedural rule is "adequate" if it was "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (state procedural rule adequate if "firmly established and regularly followed by the time as of which it is to be applied" (citation and internal quotation marks omitted)); *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001).

In *Bennett v. Mueller*, the Ninth Circuit Court of Appeals established a burden-shifting test for analyzing adequacy. *See* 322 F.3d 573, 585-86 (9th Cir. 2003). Under *Bennett*, the State carries the initial burden of pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id.* at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* If the petitioner meets this burden, "the ultimate burden" of proving the adequacy of the procedural rule rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id.*; *see also King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006).

Respondents meet their initial burden under *Bennett* by asserting that the Nevada Supreme Court affirmed the dismissal of Greene's second state habeas action based on independent and adequate state procedural grounds. On the appeal in Greene's second state habeas action, the Nevada Supreme Court ruled—independent of federal law—that the claims Greene asserted for the first time in that action were barred by NRS §§ 34.726 (statute of limitations) and 34.810 (successive petitions).

18

Regarding NRS § 34.726, the Nevada statute of limitations, the Ninth Circuit Court of Appeals has held that statute to be adequate to support application of the procedural default defense. *See Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996); *Loveland v. Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000). The Court of Appeals has never ruled NRS § 34.726 to be inadequate. The Court finds that Greene does not show NRS § 34.726 to have been other than clear, consistently applied. NRS § 34.726 is adequate to support the procedural default defense asserted by Respondents.

Regarding NRS § 34.810, the state law regarding successive petitions, the Ninth Circuit Court of Appeals has held that statute to be inadequate to support application of the procedural default doctrine. *See Riley v. McDaniel*, 786 F.3d 719 (9th Cir. 2015); *Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002); *Petrocelli v. Angelone*, 248 F.3d 877 (9th Cir. 2001). The Court determines that Respondents have not carried their ultimate burden of demonstrating that NRS § 34.810 was adequate to support application of the procedural default doctrine in Greene's case. Therefore, this Court does not apply the procedural default doctrine to any of Greene's claims based solely on the Nevada Supreme Court's application of NRS § 34.810.

Greene also argues that the Nevada law of the case doctrine is inadequate to support the procedural default defense. (ECF No. 162 at 144-46.) This argument, though, has no bearing on the claims dismissed in this order. The Court does not find any of Greene's claims to be procedurally defaulted solely based upon the Nevada Supreme Court's application of the law of the case doctrine.

**E.    Claim-Specific Analysis**

**1.    Claim 1A**

In Claim 1A, Greene claims that his federal constitutional rights were violated because of ineffective assistance of counsel, on account of his trial counsel's failure to investigate his life history. (ECF No. 119 at 15-63.)

Respondents claim, without explanation, that this claim is "partially untimely." (ECF No. 129 at 16.) The Court determines, however, that this claim shares a common core of

1  operative fact with Claim 1A of Greene's first amended petition (ECF No. 16 at 13-46),

2  and that it therefore relates back to that timely-filed petition and is not barred by the statute

3  of limitations.

4     Respondents also argue that this claim is "partially defaulted or unexhausted."

5  (ECF No. 129 at 16.) Review of the state-court record reveals that Greene presented a

6  somewhat similar claim on the appeal in his second state habeas action, but the Nevada

7  Supreme Court ruled the claim procedurally barred. (*See* ECF No. 111-1 at 30-66; ECF

8  No. 111-4.) On the appeal in Greene's first state habeas action, the only claim at all

9  related to this was a claim that Greene's trial counsel were ineffective for failing to contact

10  certain witness. (*See* ECF No. 47-3 at 9-11.) However, the allegations in Claim 1A

11  includes far greater factual detail than that, fundamentally altering the claim, and placing

12  it in a stronger evidentiary posture. "A claim has not been fairly presented in state court if

13  new factual allegations either fundamentally alter the legal claim already considered by

14  the state courts, or place the case in a significantly different and stronger evidentiary

15  posture than it was when the state courts considered it." *Dickens*, 740 F.3d at 1318

16  (internal quotation marks omitted) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986);

17  *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988); *Nevius v. Sumner*, 852 F.2d 463,

18  470 (9th Cir. 1988)). The Court determines that Claim 1A was not exhausted on the

19  appeal in Greene's first state habeas action and was ruled procedurally barred in his

20  second state habeas action, and is therefore subject to the procedural default doctrine.

21     Claim 1A, though, is a claim of ineffective assistance of trial counsel, and therefore,

22  under *Martinez*, Greene may be able to show cause and prejudice relative to the

23  procedural default on account of ineffective assistance of his counsel in his first state

24  habeas action. This cause and prejudice analysis will be intertwined with the question of

25  the merits of the claim itself, such that the procedural default issue will be better

26  addressed in conjunction with the merits of the claim, after Respondents file an answer

27  and Greene a reply. The Court will, therefore, deny Respondents' Motion as to this claim,

28

to the extent it is made on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to this claim in their answer.

### 2.   Claim 1B

In Claim 1B, Greene claims that his federal constitutional rights were violated because of ineffective assistance of counsel, on account of his trial counsel's failure to evaluate his mental health. (ECF No. 119 at 15-16, 63-69.)

Respondents argue that this claim is procedurally defaulted. Greene presented a similar claim on the appeal in his first state habeas action (ECF No. 47-3 at 4-9). However, the allegations in Claim 1B include greater factual detail than the claim presented in state court, fundamentally altering it and placing it on a stronger evidentiary posture— specifically, Claim 1B now includes allegations regarding examinations of Greene by mental health experts. Claim 1B was not exhausted in Greene's first state habeas action. *See Dickens*, 740 F.3d at 1318. The claim is therefore subject to the procedural default doctrine. However, Claim 1B is a claim of ineffective assistance of trial counsel, and, under *Martinez*, Greene may be able to show cause and prejudice relative to the procedural default on account of ineffective assistance of his counsel in his first state habeas action. The cause and prejudice analysis, though, will be intertwined with the question of the merits of the claim itself, such that the procedural default issue will be better addressed in conjunction with the merits of the claim, after Respondents file an answer and Greene a reply. The Court will, therefore, deny Respondents' Motion as to this claim, to the extent it is made on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to this claim in their answer.

### 3.   Claim 1C

In Claim 1C, Greene claims that his federal constitutional rights were violated because of ineffective assistance of counsel, on account of his trial counsel's failure to present evidence that his mental health problems and drug intoxication constituted a defense to the crime of first-degree murder. (ECF No. 119 at 15-16, 69-93.)

///

Respondents argue that this claim does not relate back to Greene's first amended petition and is therefore barred by the statute of limitations. (ECF No. 129 at 17.) The Court determines, however, that this claim shares a common core of operative fact with Claim 1C of Greene's first amended petition (ECF No. 16 at 50-65), and that it relates back to that timely-filed petition and is not barred by the statute of limitations.

Respondents also argue that this claim is procedurally defaulted. (ECF No. 129 at 17.) Greene did not exhaust this claim on the appeal in his first state habeas action; to the extent that, on that appeal, Greene touched upon the failure of his trial counsel to assert a diminished capacity defense based on mental illness and substance abuse (*see* ECF No. 47-3 at 23), the factual detail alleged in Claim 1C fundamentally alters the claim, such that it cannot be considered exhausted in Greene's first state habeas action. *See Dickens*, 740 F.3d at 1318. The claim is therefore subject to the procedural default doctrine. However, Claim 1C is a claim of ineffective assistance of trial counsel, and, under *Martinez*, Greene may be able to show cause and prejudice relative to the procedural default on account of ineffective assistance of his counsel in his first state habeas action. This cause and prejudice analysis will be intertwined with the question of the merits of the claim itself, such that the procedural default issue will be better addressed in conjunction with the merits of the claim, after Respondents file an answer and Greene a reply. The Court will, therefore, deny Respondents' Motion as to this claim, to the extent it is made on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to this claim in their answer.

### 4. Claim 1D

In Claim 1D, Greene claims that his federal constitutional rights were violated because of ineffective assistance of counsel, on account of his trial counsel's failure to present evidence of his life history and mental health problems as mitigation at the penalty phase of his trial. (ECF No. 119 at 15-16, 94-121.)

Respondents claim, without explanation, that this claim is untimely. (ECF No. 129 at 18.) The Court determines, however, that this claim shares a common core of operative

22

fact with Claim 1D of Greene's first amended petition (ECF No. 16 at 65-77), and that it therefore relates back to that timely-filed petition and is not barred by the statute of limitations.

Respondents also argue that this claim is procedurally defaulted. (ECF No. 129 at 17.) Greene did not exhaust this claim on the appeal in his first state habeas action; to the extent Greene claimed on that appeal that his trial counsel was ineffective for not presenting mitigation evidence (*see* ECF No. 47-3 at 4-11), the factual detail alleged in Claim 1D fundamentally alters the claim, such that it cannot be considered exhausted in Greene's first state habeas action. *See Dickens*, 740 F.3d at 1318. The claim is therefore subject to the procedural default doctrine. However, Claim 1D is a claim of ineffective assistance of trial counsel, and, under *Martinez*, Greene may be able to show cause and prejudice relative to the procedural default on account of ineffective assistance of his counsel in his first state habeas action. This cause and prejudice analysis will be intertwined with the question of the merits of the claim itself, such that the procedural default issue will be better addressed in conjunction with the merits of the claim, after Respondents file an answer and Greene a reply. The Court will, therefore, deny Respondents' Motion as to this claim, to the extent it is made on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to this claim in their answer.

### 5. Claim 1E

In what the Court here designates Claim 1E, Greene claims that his federal constitutional rights were violated because of ineffective assistance of counsel, on account of his trial counsel's failure to explain Greene's gang involvement and his involvement with Anthony Fisher, failure to impeach witness Phil Souza's testimony by inquiring about his drug use, failure to impeach witness Kristey Dentler by inquiring about her drug use, and failure to impeach witness Anthony Fisher by inquiring about his drug use and his manipulation of Greene. (ECF No. 119 at 118-121.)

///

Respondents argue that these claims are barred by both the statute of limitations and the procedural default doctrine (ECF No. 129 at 18).

The Court determines that these claims, identified here as cumulatively constituting Claim 1E, are not barred by the statute of limitations. Greene asserted the same claims in his first amended petition. (ECF No. 16 at 76-77.)

These claims were not asserted on the appeal in Greene's first state habeas action, and, to the extent presented on the appeal in Greene's second state habeas action, they were ruled procedurally barred. These claims are therefore subject to the procedural default doctrine. However, they are claims of ineffective assistance of trial counsel, and, under *Martinez*, Greene may be able to show cause and prejudice relative to the procedural default on account of ineffective assistance of his counsel in his first state habeas action. This cause and prejudice analysis will be intertwined with the question of the merits of the claims, such that the procedural default issue will be better addressed in conjunction with the merits of the claims, after Respondents file an answer and Greene a reply. The Court will, therefore, deny Respondents' Motion as to these claims, to the extent it is made on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to these claims in their answer.

### 6.    Claim 2A

In Claim 2A, Greene claims that his federal constitutional rights were violated because the prosecution used his delinquent juvenile behavior as a non-statutory aggravating factor during the penalty phase. (ECF No. 119 at 122-32.)

Respondents argue that Claim 2A is unexhausted and/or procedurally defaulted. (ECF No. 129 at 18-19.) This claim was not asserted on the appeal in Greene's first state habeas action, and, to the extent presented on the appeal in Greene's second state habeas action, it was ruled procedurally barred. This claim is therefore subject to the procedural default doctrine, and Greene makes no showing of cause and prejudice relative to the procedural default of this claim, or any other showing to overcome the procedural default. Claim 2A will be dismissed as procedurally defaulted.

### 7.    Claim 2B

In Claim 2B, Greene claims that his federal constitutional rights were violated because it is unconstitutional to impose the death penalty on late adolescent offenders. (ECF No. 119 at 122-23, 132-46.)

Respondents argue that this claim is barred by the statute of limitations. (ECF No. 129 at 18.) The Court agrees. There is no claim in Greene's original or first amended petition sharing a common core of operative fact with Claim 2B. The Court determines, further, that Greene has not shown that a later date of accrual should apply to this claim, or that, even if a later accrual date applied, he timely asserted this claim after that date; nor does Greene make a colorable showing that he is innocent of the death penalty as alleged in this claim. (*See* ECF No. 162 at 49-50.) Claim 2B is barred by the statute of limitations.

Respondents also argue that Claim 2B is unexhausted and/or barred by the procedural default doctrine. (ECF No. 129 at 18.) Greene, in turn, concedes that this claim is technically exhausted and subject to the procedural default doctrine. (ECF No. 162 at 97.) Greene does not make any showing of cause, or any other showing to overcome the procedural default. Claim 2B will be dismissed as procedurally defaulted and barred by the statute of limitations.

### 8.    Claim 2C

In what the Court here designates as Claim 2C, Greene claims that his trial counsel were ineffective for failing to move to exclude evidence of his delinquent juvenile behavior and for failing to present evidence that he functioned at a lower level than his chronological age. (ECF No. 119 at 130-32.)

Respondents argue that Claim 2C is barred by the procedural default doctrine. (ECF No. 129 at 19.) Greene did not exhaust this claim on the appeal in his first state habeas action, and, to the extent Greene made any such claim on the appeal in his second state habeas action, the claim was ruled procedurally barred. The claim is therefore subject to the procedural default doctrine. However, Claim 2C is a claim of

ineffective assistance of trial counsel, and, under *Martinez*, Greene may be able to show cause and prejudice relative to the procedural default on account of ineffective assistance of his counsel in his first state habeas action. This cause and prejudice analysis will be intertwined with the question of the merits of the claim itself, such that the procedural default issue will be better addressed in conjunction with the merits of the claim, after Respondents file an answer and Greene a reply. The Court will, therefore, deny Respondents' Motion as to this claim, to the extent it is made on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to this claim in their answer.

### 9.    Claim 3

In Claim 3, Greene claims that his federal constitutional rights were violated because of the prosecution's failure to disclose material exculpatory and impeachment information, and presentation of false testimony, related to benefits that were promised to, and conferred upon, witness Anthony Fisher. (ECF No. 119 at 147-57.)

Respondents argue that the part of Claim 3 alleging that the prosecution presented false testimony is barred by the statute of limitations. (ECF No. 129 at 19.) The Court disagrees. In Claim 3 of his timely first amended petition (ECF No. 16 at 107-10), Greene asserted the claim alleging that the prosecution failed to disclose material exculpatory and impeachment information, and that claim shares a common core of operative fact— the allegation that there were undisclosed benefits promised to and conferred upon witness Anthony Fisher that were not disclosed—with the claim that the prosecution presented false testimony. Claim 3 is not barred by the statute of limitations.

Respondents also argue that Claim 3 is, in part, unexhausted and/or procedurally defaulted. (ECF No. 129 at 19.) Greene argues that he can show cause and prejudice relative to any procedural default of the claim based upon the prosecution's suppression of evidence. (ECF No. 162 at 177-81.) The Court determines that this cause and prejudice analysis will be intertwined with the question of the merits of the claim itself, such that the procedural default issue will be better addressed in conjunction with the merits of the

1  claim, after Respondents file an answer and Greene a reply. The Court will, therefore,

2  deny Respondents' Motion as to this claim, to the extent it is made on procedural default

3  grounds, without prejudice to Respondents asserting the procedural default defense to

4  this claim in their answer.

5            **10.    Claim 4**

6        In Claim 4, Greene claims that his federal constitutional rights were violated

7  because he is actually innocent of murder. (ECF No. 119 at 158-88.)

8        Respondents argue that this freestanding claim of actual innocence is not

9  cognizable in this federal habeas action, and that, at any rate, it is unexhausted and

10  procedurally defaulted. (ECF No. 129 at 19-20.)

11        Regarding the questions of exhaustion and procedural default, as the Court

12  understands Greene's argument, he concedes that this claim is technically exhausted

13  and subject to the procedural default doctrine. (ECF No. 162 at 99-104.) Apparently,

14  Greene's position is that he can overcome the procedural default because the claim itself

15  is that Greene is actually innocent. *See Schlup*, 513 U.S. at 324. But, as is discussed

16  above in section III.A., Greene does not establish a gateway claim of actual innocence.

17  The Court, therefore, determines that Greene's freestanding claim of actual innocence is

18  subject to dismissal as procedurally defaulted.

19        Regarding the question of the cognizability of the claim, the Supreme Court has

20  yet to hold that a freestanding claim of actual innocence is cognizable in a federal habeas

21  action. *See McQuiggin v. Perkins*, 569, U.S. 383, 392 (2013). However, both the Supreme

22  Court and the Ninth Circuit Court of Appeals have assumed, without deciding, that such

23  a claim may exist, at least in a capital case. *See House v. Bell*, 547 U.S. 518, 554-55

24  (2006); *Herrera v. Collins*, 506 U.S. 390, 417-19, 427 (1993); *Jones v. Taylor*, 763 F.3d

25  1242, 1246 (9th Cir. 2014). The petitioner's burden on such a freestanding claim of actual

26  innocence would be "extraordinarily high" and would require a showing that is "truly

27  persuasive." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (quoting *Herrera*, 506

28  U.S. at 417). Both the Supreme Court and the Ninth Circuit Court of Appeals have

1   instructed that, for a freestanding actual innocence claim, a petitioner would have to "go

2   beyond demonstrating doubt about his guilt, and must affirmatively prove that he is

3   probably innocent." *Jones*, 763 F.3d at 1246 (quoting *Herrera*, 506 U.S. at 417, and

4   *Carriger*, 132 F.3d at 476). In *House*, the Supreme Court stated that its precedent implies

5   that a freestanding claim of actual innocence would require more convincing proof of

6   innocence than a gateway claim under *Schlup*. *See House*, 547 U.S. at 555. Therefore,

7   even if Greene's freestanding claim of actual innocence was not procedurally defaulted,

8   and assuming such a claim would be cognizable in this action, Greene's failure to

9   establish the gateway claim of actual innocence necessarily means that he fails to meet

10  the standard that would be required to establish a freestanding claim of actual innocence.

11  Greene's freestanding claim of actual innocence is therefore subject to dismissal.

12       The Court will grant Respondents' Motion with respect to Claim 4.

13            **11.   Claim 5**

14       In Claim 5, Greene claims that his federal constitutional rights were violated

15  because the offense of first-degree murder, as interpreted by the Nevada Supreme Court

16  and defined by the jury instructions, was unconstitutionally vague, and the jury

17  instructions relieved the prosecution of proving every element of the offense. (ECF No.

18  119 at 190-205.)

19       Respondents do not argue that Claim 5 is barred by the statute of limitations, or

20  that it is unexhausted or procedurally defaulted. (*See* ECF No. 129 at 20-21.) The

21  arguments that Respondents make regarding Claim 5 (*see id.*) go to the merits of the

22  claim and will be better addressed after Respondents file an answer and Greene a reply.

23  The Court will deny Respondents' motion to dismiss as to this claim, without prejudice to

24  Respondents asserting in their answer the arguments they make in their Motion.

25            **12.   Claim 6A**

26       In Claim 6A, Greene claims that his federal constitutional rights were violated

27  because the prosecution committed prosecutorial misconduct in argument. (ECF No. 119

28  at 206-14, 219-20.)

Respondents argue that this claim is, in part, unexhausted and/or procedurally defaulted. (ECF No. 129 at 21.) The Court agrees. In Claim 6A, Greene claims that the prosecution committed misconduct in its opening statement in the guilt phase of his trial, in its closing argument in the guilt phase, and in its closing argument in the penalty phase. (ECF No. 119 at 206-14, 219-20.) In state court, on his direct appeal, Greene claimed that the prosecution committed misconduct in its arguments. (*See* ECF Nos. 42-4 and 42-5 (opening brief), 42-8 (reply brief)). However, in his briefing on the direct appeal, Greene limited his claims to alleged improper arguments in the prosecution's opening statement in the guilt phase, and arguments concerning victim impact in the prosecution's closing argument in the guilt phase. (*See* ECF Nos. 42-4 at 29-31, 42-5 at 2-4, 42-8 at 7-11.) The Nevada Supreme Court ruled on the merits of those claims. *See Greene v. State*, 931 P.2d 54, 61-63 (1997). Beyond the arguments made in his briefing on direct appeal, Greene's claims of prosecutorial misconduct in the prosecution's arguments, in Claim 6A, were not asserted on his direct appeal and are procedurally defaulted. Greene does not make a showing of cause and prejudice any other showing to overcome the procedural default.

The Court will grant Respondents' Motion with respect to the procedurally defaulted portion of Claim 6A. The Court will dismiss all of Claim 6A except the claims that the prosecution made improper arguments in its opening statement in the guilt phase of the trial and improper arguments concerning victim impact in its closing argument in the guilt phase of the trial.

### 13. Claim 6B

In Claim 6B, Greene claims that his federal constitutional rights were violated because the prosecution committed prosecutorial misconduct by eliciting improper evidence. (ECF No. 119 at 206, 214-20.) Respondents make no argument that Claim 6B is subject to dismissal. (*See* ECF No. 129 at 21.)

///

///

### 14. Claim 6C

In Claim 6C, Greene claims that his federal constitutional rights were violated because the prosecution committed prosecutorial misconduct by failing to disclose material exculpatory and impeachment evidence regarding witness Anthony Fisher. (ECF No. 119 at 206, 218-20.)

Respondents argue that this claim is procedurally defaulted. (ECF No. 129 at 21.) For the reasons stated above in section III(E)(9), regarding Claim 3, the Court will deny Respondents' Motion as to this claim, to the extent it is made on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to this claim in their answer.

### 15. Claim 7A

In Claim 7A, Greene claims that his federal constitutional rights were violated because the random and without apparent motive aggravating circumstance is unconstitutionally vague. (ECF No. 119 at 221-27, 231.) Respondents make no argument that Claim 7A is subject to dismissal. (*See* ECF No. 129 at 21-22.)

### 16. Claim 7B

In Claim 7B, Greene claims that his federal constitutional rights were violated because the random and without apparent motive aggravating circumstance is unconstitutional as applied in this case. (ECF No. 119 at 228-29, 231.) Respondents make no argument that Claim 7B is subject to dismissal. (*See* ECF No. 129 at 21-22.)

### 17. Claim 7C

In Claim 7C, Greene claims that his federal constitutional rights were violated because the random and without apparent motive aggravating circumstance has the effect of shifting the burden of proof; it burdens the defendant's right to present a defense at trial; it burdens the defendant's right against self-incrimination; it punishes the absence of a motive; and it provides no rational basis for distinguishing between those offenders who deserve the death penalty and those who do not. (ECF No. 119 at 229-31.)

1    Respondents make no argument that any of the claims here designated as Claim 7C are

2    subject to dismissal. (See ECF No. 129 at 21-22.)

3              **18.**    **Claim 8**

4        In Claim 8, Greene claims that his federal constitutional rights were violated

5    because of the trial court's refusal to allow impeachment of witness Heather Barker. (ECF

6    No. 119 at 232-36.) Respondents make no argument that Claim 8 is subject to dismissal.

7    (*See* ECF No. 129 at 22.)

8              **19.**    **Claim 9**

9        In Claim 9, Greene claims that his federal constitutional rights were violated

10    because of the admission of gruesome photographs into evidence. (ECF No. 119 at 237-

11    43.) Respondents make no argument that Claim 9 is subject to dismissal. (*See* ECF No.

12    129 at 22.)

13             **20.**    **Claim 10A**

14        In Claim 10A, Greene claims that his federal constitutional rights were violated

15    because he was wrongfully administered antipsychotic medication prior to and during his

16    trial and sentencing. (ECF No. 119 at 244-74.)

17        Respondents argue that Claim 10A is procedurally defaulted. (ECF No. 129 at 22-

18    23.) Greene did not assert such a claim on direct appeal. (*See* ECF Nos. 42-4, 42-5.)

19    Greene asserted a similar claim on the appeal in his first state habeas action. (ECF No.

20    47-2 at 24.) On that appeal, the Nevada Supreme Court ruled:

21            To the extent Greene raises these issues as claims independent of
             ineffective assistance of counsel, he failed to demonstrate good cause for
22            his failure to raise them on direct appeal, and they are procedurally barred.
             *See* NRS 34.810(1), (3).
23

24    (ECF No. 50-7, p. 4 n. 8.)   However, as is discussed in section III(D)(2) above, NRS §

25    34.810 was inadequate to support application of the procedural default doctrine.

26        Greene then, again, asserted a similar claim on the appeal in his second state

27    habeas action. (*See* ECF No. 111-1 at 92-96.) On that appeal, the Nevada Supreme

28    Court ruled:

1
2
3
4

> We reject Greene's claim that the district court erred in denying his challenges concerning … the administration of anti-psychotic medication during trial … because he merely reargues the merits of [this claim] and he has not pointed to any authority since the denial of his prior petition that necessitates a departure from this court's prior holdings. *See* [*Hsu v. County of Clark*, 123 Nev. 625, 630, 173 P.3d 724, 728–29 (2007)]; [*Pellegrini v. State*, 117 Nev. 860, 885, 34 P.3d 519, 535–36 (2001)].

5    (ECF No. 111-4 at 9-10 n.5.) So, there, the Nevada Supreme Court ruled the claim

6    barred because it had been asserted previously and ruled upon—ruled barred by NRS §

7    34.810—in Greene's first state habeas action. But, again, NRS § 34.810, the procedural

8    rule applied to bar the claim in Greene's first state habeas action, was inadequate to

9    support application of the procedural default doctrine.

10         The Court, therefore, determines that Claim 10A is not barred by the procedural

11   default doctrine. Respondents' Motion will be denied as to Claim 10A.

12                           **21.    Claim 10B**

13         In Claim 10B, Greene claims that his federal constitutional rights were violated on

14   account of ineffective assistance of counsel, because his trial counsel were ineffective in

15   handling the matter of the administration of antipsychotic medication to him. (ECF No.

16   119 at 244-45, 274-80.)

17         Respondents argue that Claim 10B is unexhausted, and therefore now

18   procedurally defaulted, as discussed in section III(C)(4) (regarding anticipatory

19   procedural default). This, though, is a claim of ineffective assistance of trial counsel.

20   Therefore, under *Martinez*, Greene may be able to show cause and prejudice relative to

21   the alleged procedural default on account of ineffective assistance of his counsel in his

22   first state habeas action. This cause and prejudice analysis will be intertwined with the

23   question of the merits of the claim itself, such that the procedural default issue will be

24   better addressed in conjunction with the merits of the claim, after Respondents file an

25   answer and Greene a reply. The Court will, therefore, deny Respondents' Motion as to

26   this claim, to the extent it is made on procedural default grounds, without prejudice to

27   Respondents asserting the procedural default defense to this claim in their answer.

28   ///

### 22. Claim 11A

In Claim 11A, Greene claims that his federal constitutional rights were violated because pre-trial publicity deprived him of a fair trial. (ECF No. 119 at 281-86, 301-02.)

Respondents argue that this claim is barred by the statute of limitations. (ECF No. 129 at 24.) However, the Court determines that Claim 4 of Greene's timely first amended petition (ECF No. 16 at 111-24) shares core operative facts with Claim 11A. (*See* ECF No. 16 at 111 ("Pre-trial publicity and voir dire errors deprived Mr. Greene of a fair trial.").) Claim 11A is not barred by the statute of limitations.

Respondents also argue that Claim 11A is unexhausted and procedurally defaulted. (ECF No. 129 at 24.) The Court agrees. Greene did not assert such a claim on direct appeal. (See ECF Nos. 42-4, 42-5.) On the appeal in his first state habeas action, Greene asserted related claims of ineffective assistance of counsel. (ECF No. 47-3 at 12.) That, however, did not exhaust Greene's substantive claim, that his federal constitutional rights were violated because pre-trial publicity deprived him of a fair trial. Assertion of an ineffective assistance of counsel claim in state court does not exhaust the related substantive claim. *See Rose v. Palmateer*, 395 F.3d 1108, 1110-13 (9th Cir. 2005), *cert. denied*, 545 U.S. 1114 (2005). Claim 11A is procedurally defaulted, and Greene does not make a showing of cause and prejudice, or any other showing to overcome the procedural default. Respondents' Motion will be granted, on the ground of procedural default, with respect to Claim 11A.

### 23. Claim 11B

In Claim 11B, Greene claims that his federal constitutional rights were violated because the manner in which the trial court conducted juror voir dire, and the trial judge's questioning and comments, tainted prospective jurors, lacked uniformity, negated the value of the juror questionnaires, and deprived him of a fair trial. (ECF No. 119 at 281-82, 286-97, 301-02.)

Respondents argue that these claims, designated here as Claim 11B, are barred by the statute of limitations. (ECF No. 129 at 24.) However, the Court determines that

1   Claim 4 of Greene's timely first amended petition (ECF No. 16 at 111-24) shares core

2   operative facts with Claim 11B. Claim 11B is not barred by the statute of limitations.

3       Respondents also argue that these claims are unexhausted and procedurally

4   defaulted. (ECF No. 129 at 24.) The Court agrees. Greene did not assert any such claims

5   on direct appeal. (See ECF Nos. 42-4, 42-5.) Nor did Greene assert these claims on the

6   appeal in either his first or second state habeas action. (*See* ECF Nos. 47-2, 47-3, 47-4,

7   111-1.) Claim 11B is procedurally defaulted, and Greene does not make a showing of

8   cause and prejudice, or any other showing to overcome the procedural default.

9   Respondents' Motion will be granted, on the ground of procedural default, with respect to

10   the claims designated in this order as Claim 11B.

11                     **24.   Claim 11C**

12       In Claim 11C, Greene claims that his federal constitutional rights were violated on

13   account of ineffective assistance of counsel, because his trial counsel were ineffective

14   for failing to challenge several biased jurors for cause. (ECF No. 119 at 281-82, 297-99,

15   301-02.)

16       Respondents argue that this claim is barred by the statute of limitations. (ECF No.

17   129 at 24.) However, the Court determines that Claim 4 of Greene's timely first amended

18   petition (ECF No. 16 at 111-24) shares core operative facts with Claim 11C. Claim 11C

19   is not barred by the statute of limitations.

20       Respondents also argue that Claim 11C is unexhausted and procedurally

21   defaulted. (ECF No. 129 at 24-25.) Greene did not assert such a claim on direct appeal.

22   (*See* ECF Nos. 42-4, 42-5.) Nor did Greene assert this claim on the appeal in either his

23   first or second state habeas action. (*See* ECF Nos. 47-2, 47-3, 47-4, 111-1.) Claim 11C

24   is therefore subject to the procedural default doctrine. However, Claim 11C is a claim of

25   ineffective assistance of trial counsel, and therefore, under *Martinez*, Greene may be able

26   to show cause and prejudice relative to the procedural default on account of ineffective

27   assistance of his counsel in his first state habeas action. This cause and prejudice

28   analysis will be intertwined with the question of the merits of the claim itself, such that the

procedural default issue will be better addressed in conjunction with the merits of the claim, after Respondents file an answer and Greene a reply. The Court will, therefore, deny Respondents' Motion as to this claim, to the extent it is made on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to this claim in their answer.

### 25.    Claim 11D

In Claim 11D, Greene claims that his federal constitutional rights were violated on account of ineffective assistance of counsel, because his trial counsel were ineffective for failing to ensure the voir dire process resulted in a constitutionally adequate jury panel. (ECF No. 119 at 281-82, 294-95, 299, 301-02.)

Respondents argue that this claim is barred by the statute of limitations. (ECF No. 129 at 25.) However, the Court determines that Claim 4 of Greene's timely first amended petition (ECF No. 16 at 111-24) shares core operative facts with Claim 11D. Claim 11D is not barred by the statute of limitations.

Respondents also argue that Claim 11D is unexhausted and procedurally defaulted. (ECF No. 129 at 25.) Greene did not assert such a claim on direct appeal. (*See* ECF Nos. 42-4, 42-5.) Nor did Greene assert this claim on the appeal in either his first or second state habeas action. (*See* ECF Nos. 47-2, 47-3, 47-4, 111-1.) Claim 11D is therefore subject to the procedural default doctrine. However, Claim 11D is a claim of ineffective assistance of trial counsel, and therefore, under *Martinez*, Greene may be able to show cause and prejudice relative to the procedural default on account of ineffective assistance of his counsel in his first state habeas action. This cause and prejudice analysis will be intertwined with the question of the merits of the claim itself, such that the procedural default issue will be better addressed in conjunction with the merits of the claim, after Respondents file an answer and Greene a reply. The Court will, therefore, deny Respondents' Motion as to this claim, to the extent it is made on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to this claim in their answer.

### 26.    Claim 11E

In Claim 11E, Greene claims that his federal constitutional rights were violated on account of ineffective assistance of counsel, because his trial counsel were ineffective for failing to make appropriate challenges to jurors based on *Batson v. Kentucky*, 476 U.S. 79 (1986). (ECF No. 119 at 281-82, 300-02.)

Respondents argue that this claim is barred by the statute of limitations. (ECF No. 129 at 25.) However, the Court determines that Claim 4 of Greene's timely first amended petition (ECF No. 16 at 111-24) shares core operative facts with Claim 11E. Claim 11E is not barred by the statute of limitations.

Respondents also argue that Claim 11E is unexhausted and procedurally defaulted. (ECF No. 129 at 25.) Greene did not assert such a claim on direct appeal. (*See* ECF Nos. 42-4, 42-5.) Nor did Greene assert this claim on the appeal in either his first or second state habeas action. (*See* ECF Nos. 47-2, 47-3, 47-4, 111-1.) Claim 11E is therefore subject to the procedural default doctrine. However, Claim 11E is a claim of ineffective assistance of trial counsel, and therefore, under *Martinez*, Greene may be able to show cause and prejudice relative to the procedural default on account of ineffective assistance of his counsel in his first state habeas action. This cause and prejudice analysis will be intertwined with the question of the merits of the claim itself, such that the procedural default issue will be better addressed in conjunction with the merits of the claim, after Respondents file an answer and Greene a reply. The Court will, therefore, deny Respondents' Motion as to this claim, to the extent it is made on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to this claim in their answer.

### 27.    Claim 11F

In Claim 11F, Greene claims that his federal constitutional rights were violated on account of ineffective assistance of counsel, because his trial counsel were ineffective for failing to move for a change of venue. (ECF No. 119 at 281-82, 301-02.) Respondents make no argument that Claim 11F is subject to dismissal. (*See* ECF No. 129 at 25.)

36

**28.  Claim 12A**

In Claim 12A, Greene claims that his federal constitutional rights were violated on account of ineffective assistance of counsel, because his appellate counsel was ineffective for failing to assert all the claims asserted in this petition. (ECF No. 119 at 303-06.)

Respondents argue that Claim 12A is, in part barred by the statute of limitations, and in part barred by the procedural default doctrine. (ECF No. 129 at 25.)

With respect to the statute of limitations, in Claim 13 of his timely first amended petition, Greene claimed that his appellate counsel was ineffective for failing to raise all the claims presented in that first amended petition. (ECF No. 16 at 176.) Therefore, Claim 12A of Greene's second amended petition relates back to his first amended petition, and is timely, to the extent that the claims underlying it were presented in his first amended petition. The Court, then, determines that Claim 12A is barred by the statute of limitations to the extent Greene claims that his appellate counsel was ineffective for failing to assert, on his direct appeal, the claims in Claims 2B, 12B and 14.

With respect to the questions of exhaustion and procedural default, Greene asserted certain specific claims of ineffective assistance of appellate counsel on the appeal in his first state habeas action. (*See* ECF Nos. 47-2, 47-3 and 47-4.) On that appeal, Greene claimed that his appellate counsel was ineffective because of a conflict of interest, that his appellate counsel was ineffective for failing to effectively communicate with Greene, that his appellate counsel was ineffective for failing to effectively challenge the constitutionality of Nevada's death penalty scheme, that his appellate counsel was ineffective for failing to challenge prosecutorial misconduct during the penalty phase, that his appellate counsel was ineffective for failing to challenge the reasonable doubt instruction, and that his appellate counsel was ineffective for failing to challenge the first-degree murder instructions. (ECF No. 47-4 at 16–21.) To the extent that Greene asserts in Claim 12A claims of ineffective assistance of appellate counsel that he asserted on the appeal in his first state habeas action, his claims are not procedurally defaulted. The Court

determines, then, that Claim 12A is not procedurally defaulted with respect to Greene's claims that his appellate counsel was ineffective for not asserting the claims in Claims 5, 6A to the extent that Greene claims the prosecution committed misconduct in its closing arguments in the penalty phase of his trial, 7A, and 7C. The remainder of Claim 12A is procedurally defaulted, and Greene does not make a showing of cause and prejudice, or any other showing to overcome the procedural default.

The Court will grant Respondents' Motion with respect to the time-barred and procedurally defaulted parts of Claim 12A.

### 29.    Claim 12B

In Claim 12B, Greene claims that his federal constitutional rights were violated on account of ineffective assistance of counsel, because he had only one attorney on his direct appeal. (ECF No. 119 at 305-06.)

The Court determines that this claim is barred by both the statute of limitations and the procedural default doctrine.

The core operative fact of this claim is that Greene had only one attorney to represent him on his direct appeal. In his first amended petition in this action, Greene did not allege that fact as the basis for any claim. (*See* ECF No. 16 at 176.) Therefore, Claim 12B does not relate back to Greene's first amended petition, and it is barred by the statute of limitations.

Furthermore, Greene did not assert any claim like Claim 12B on the appeal in either his first or second state habeas action. (*See* ECF Nos. 47-2, 47-3, 47-4, 111-1.) Claim 12B is procedurally defaulted, and Greene does not make a showing of cause and prejudice, or any other showing to overcome the procedural default.

The Court will grant Respondents' Motion with respect to Claim 12B.

### 30.    Claim 13

In Claim 13, Greene claims that his federal constitutional rights were violated because of the cumulative effect of the errors described in this petition. (ECF No. 119 at 307-09.) This cumulative error claim is procedurally viable because there are underlying

1   claims that are not dismissed in this order. The Court will deny Respondents' Motion with

2   respect to Claim 13.

3                    **31.    Claim 14**

4             In Claim 14, Greene claims that his federal constitutional rights were violated

5   because of the absence of a jury instruction defining the standard of proof as beyond a

6   reasonable doubt in the weighing stage of Greene's penalty hearing. (ECF No. 119 at

7   310-11.) This claim is based on the Supreme Court's January 12, 2016, decision in *Hurst*.

8             Respondents argue that Claim 14 is barred by the statute of limitations. (ECF No.

9   129 at 27.) Greene responds, arguing that Claim 14 was timely filed because he asserted

10  the claim in this action within a year after *Hurst* was decided. (ECF No. 162 at 54; *see*

11  *also* ECF No. 100.) Greene cites 28 U.S.C. § 2244(d)(1)(D). (ECF No. 162 at 54.) The

12  citation to section 2244(d)(1)(D) is inapposite. Section 2244(d)(1)(D) provides that the

13  statute of limitations runs from "the date on which the factual predicate of the claim or

14  claims presented could have been discovered through the exercise of due diligence." 28

15  U.S.C. § 2244(d)(1)(D). The factual predicate of Claim 14 is the manner in which the jury

16  was instructed to weigh aggravating and mitigating circumstances, and that was apparent

17  at the time of trial and is apparent in the trial record. The decision in *Hurst* did not reveal

18  the factual predicate of Claim 14. Greene could—perhaps more appropriately—argue that

19  *Hurst* established the legal basis for the claim for the first time, and that, therefore, 28

20  U.S.C. § 2244(d)(1)(C) applies. Section 2244(d)(1)(C) provides that the statute of

21  limitations runs from "the date on which the constitutional right asserted was initially

22  recognized by the Supreme Court, if the right has been newly recognized by the Supreme

23  Court and made retroactively applicable to cases on collateral review." 28 U.S.C. §

24  2244(d)(1)(C). But that argument would fail as well. The last clause of section

25  2244(d)(1)(C) precludes its application to Greene's *Hurst* claim, because the Supreme

26  Court has ruled that *Hurst* did not establish a new rule that applies retroactively on

27  collateral review. *McKinney v. Arizona*, 140 S.Ct. 702, 708 (2020) ("[*Ring v. Arizona*, 536

28

U.S. 584 (2002)] and *Hurst* do not apply retroactively on collateral review." (citing *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004))).

Claim 14 does not relate back to any claim in either Greene's original petition or his first amended petition, and it is barred by the statute of limitations. The Court will grant Respondents' Motion the claim on that ground. The Court need not, and declines to, reach the issues of the alleged procedural default of the claim and the bar of the claim under *Teague v. Lane*, 489 U.S. 288 (1989). (*See* ECF No. 129 at 27-28.)

### 32.    Claim 15

In Claim 15, Greene claims that his federal constitutional rights were violated because his trial, sentencing, direct appeal, and post-conviction proceedings were conducted before elected state court judges. (ECF No. 119 at 312-16.)

Respondents argue that Claim 15 is procedurally defaulted, and that it is not cognizable in this federal habeas corpus action. (ECF No. 129 at 28.)

Greene did not assert such a claim on direct appeal. (See ECF Nos. 42-4, 42-5.) Greene asserted a similar claim on the appeal in his first state habeas action (ECF No. 47-4 at 23-25), and the Nevada Supreme Court ruled:

> Greene contends that his trial proceedings and this court's review on direct appeal violated his constitutional rights because they were conducted by judicial officers whose tenure in office was dependent upon popular election. Because this claim was not raised on direct appeal, it is procedurally barred. [Footnote: *See* NRS 34.810(1)(b)(1).] Greene has failed to overcome this bar. Thus, we conclude that this claim was properly denied by the district court. [Footnote: *See* NRS 34.810(3).]

(ECF No. 50-7 at 19.) However, as is discussed in section III(D)(2) above, NRS § 34.810 is inadequate to support application of the procedural default doctrine. The Court then, determines that Claim 15 is not barred by the procedural default doctrine.

The question whether this claim is cognizable, as raised by Respondents (*see* ECF No. 129 at 28), will be better addressed in conjunction with the merits of the claim, after Respondents file an answer and Greene a reply. The Court will deny Respondents' Motion this claim, to the extent made on cognizability grounds, without prejudice to Respondents raising the question of the cognizability of the claim in their answer.

### 33.    Claim 16A

In Claim 16A, Greene claims that his sentence violates his federal constitutional rights because execution by lethal injection is unconstitutional in all circumstances. (ECF No. 119 at 317-29.) Respondents do not make any argument that this claim is subject to dismissal. (*See* ECF No. 129 at 28-29.)

### 34.    Claim 16B

In Claim 16B, Greene claims that his sentence violates his federal constitutional rights because execution by lethal injection, as it would be carried out in Nevada, is unconstitutional. (ECF No. 119 at 330-42.)

Respondents argue that this claim is unexhausted, procedurally defaulted, not ripe, and not cognizable. (ECF No. 129 at 28-29.) The Court recognizes that Respondents raise serious questions about the procedural viability of this claim in this habeas corpus action; however, as it is unclear whether the State has yet established the protocol by which Greene's execution would be conducted, the Court will deny Respondents' Motion as to Claim 16B, and will leave these questions, and any other issues concerning the claim, to be determined after Respondents file an answer and Greene a reply. The denial of dismissal as to this claim is without prejudice to Respondents raising the same arguments regarding the claim in their answer.

### F.    Motion for Leave to Conduct Discovery

In his motion for leave to conduct discovery (ECF No. 164), Greene requests leave to conduct "[d]iscovery showing that trial counsel were ineffective in failing to investigate and present mental health evidence" (ECF No. 164 at 6-11) and "[d]iscovery showing that the State failed to disclose exculpatory and impeachment evidence" (*id.* at 11-35). In this order, the Court does not dismiss any of the claims to which this proposed discovery would relate. Further consideration of the claims on which Greene wishes to conduct discovery is deferred until after Respondents file an answer and Greene files a reply. Therefore, there is no showing of good cause for Greene to conduct discovery relative to Respondents' Motion. The Court will deny Greene's motion for leave to conduct

1   discovery. Greene may file a new motion for leave to conduct discovery, if factually and

2   legally justified, in conjunction with his reply to Respondents' answer, as contemplated in

3   the scheduling order entered December 6, 2019 (ECF No. 113).

4           **G.     Motion for Evidentiary Hearing**

5           Greene requests an evidentiary hearing to establish his gateway actual innocence

6   claim under *Schlup*, to show that the prosecution failed to comply with its obligation to

7   disclose exculpatory and impeachment information, and to establish ineffective

8   assistance of his post-conviction counsel under *Martinez*. (ECF No. 167 at 3-13.)

9           Regarding Greene's gateway claim of actual innocence under *Schlup*, as is

10  discussed above in section III(A), the Ninth Circuit Court of Appeals has held that the kind

11  of evidence Greene proffered in an attempt show actual innocence is insufficient to make

12  such a showing. *See Boyde*, 404 F.3d at 1167-69; *Griffin*, 350 F.3d at 965. In light of this

13  authority, Greene's gateway claim of actual innocence fails. There is no need for an

14  evidentiary hearing.

15          Greene's claim that the prosecution failed to comply with its obligation to disclose

16  exculpatory and impeachment information is made in Claim 3. As is discussed above in

17  section III(E)(9), the Court determines that the question of procedural default of that claim

18  will be better addressed in conjunction with the merits of the claim, after Respondents file

19  an answer and Greene a reply, and the Court therefore denies Respondents' Motion as

20  to the claim, to the extent it is made on procedural default grounds, without prejudice to

21  Respondents asserting the procedural default defense to the claim in their answer.

22          And, similarly, regarding the question whether there is cause and prejudice for any

23  procedural default on account of ineffective assistance of Greene's post-conviction

24  counsel, the Court defers consideration of such issues until after the merits of Greene's

25  claims are briefed.

26          Therefore, an evidentiary hearing is unwarranted at this time on the issues on

27  which Greene seeks one. Greene's motion for an evidentiary hearing to support his

28  opposition to Respondents' Motion will be denied. Greene may file a new motion for an

evidentiary hearing, if factually and legally justified, in conjunction with his reply to Respondents' answer, as contemplated in the scheduling order entered December 6, 2019 (ECF No. 113).

## IV.   CONCLUSION

It is therefore ordered that Respondents' motion to dismiss (ECF No. 129) is granted in part and denied in part. The following claims in Petitioner's second amended habeas petition are dismissed:

- Claim 2A;

- Claim 2B;

- Claim 4;

- all of Claim 6A except the claims that the prosecution made improper arguments in its opening statement in the guilt phase of the trial, and improper arguments concerning victim impact in its closing argument in the guilt phase of the trial;

- Claim 11A;

- Claim 11B;

- all of Claim 12A except the claims that appellate counsel was ineffective for not asserting the claims in Claims 5, 6A to the extent of alleged prosecutorial misconduct in closing arguments in the penalty phase, 7A, and 7C;

- Claim 12B; and

- Claim 14.

It is further ordered that Petitioner's Motion for Leave to Conduct Discovery (ECF No. 164) is denied.

It is further ordered that Petitioner's Motion for Evidentiary Hearing (ECF No. 167) is denied.

It is further ordered that Respondents shall, within 180 days from the date of this order, file an answer, responding to the remaining claims in Petitioner's Second Amended Petition for Writ of Habeas Corpus (ECF No. 119). The time for Petitioner to file a reply to Respondents' answer, as set forth in the December 6, 2019, scheduling order (ECF No. 113), will be extended to 180 days. In all other respects, the schedule for further

1    proceedings set forth in the December 6, 2019, scheduling order (ECF No. 113) will

2    remain in effect.

3        DATED THIS 22nd Day of November 2021.

4

5

6        _____
         MIRANDA M. DU
7        CHIEF UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28