UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Travers A. Greene, | Case No. 2:07-cv-00304-CDS-DJA |
| Petitioner | **Order Granting in Part Petitioner's Motion to Amend Judgment** |
| v. | |
| William Gittere, et al., | |
| Respondents | [ECF No. 222] |

In this capital habeas corpus action, petitioner Travers A. Greene was sentenced in Nevada state court to death after a jury found him guilty of conspiracy to commit murder, two counts of first-degree murder with the use of a deadly weapon, and possession of a stolen vehicle after he travelled to Sunrise Mountain in a stolen car and shot two campers, Christopher Peyton and Deborah Farris, in September 1994. ECF No. 41-8. On February 14, 2025, I denied Greene's Second-Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Second-Amended Petition") but granted a Certificate of Appealability for ground 1d. ECF No. 220 ("Merits Order"). Judgment was entered. ECF No. 221.

This action is now before the Court on Greene's motion to alter or amend the Judgment. ECF No. 222 ("Motion"). Respondents opposed the motion, and Greene replied. ECF Nos. 230, 233. For the reasons discussed below, I grant the motion, in part.

I.      **Legal Standard**

Rule 59(e) of the Federal Rules of Civil Procedure states that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). As the Ninth Circuit has recognized, "a Rule 59(e) motion is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted). Absent highly unusual circumstances,

reconsideration under Rule 59(e) is "available only when (1) the court committed manifest errors of law or fact, (2) the court is presented with newly discovered or previously unavailable evidence, (3) the decision was manifestly unjust, or (4) there is an intervening change in the controlling law." *Rishor v. Ferguson*, 822 F.3d 482, 491–92 (9th Cir. 2016).

II.    Discussion

Greene moves to alter or amend the Judgment in this case under Rule 59(e), arguing that (1) the Court committed a manifest error of law and fact in failing to consider the evidence he presented during his second state postconviction proceeding; (2) the Court's denial of grounds 1a and 1d reflects a manifest error of law and fact; (3) the Court should reconsider grounds 3 and 8 because intervening authority from the United States Supreme Court entitles him to relief; (4) the recent United States Supreme Court decision in *Loper Bright Enterprises* demonstrates that the Court should apply a less restrictive form of AEDPA deference; (5) the Court committed manifest error of law by applying an overly broad standard in denying ground 9; (6) the Court committed a manifest error of law by speculating about race-neutral explanations under *Batson*; and (7) the Court's failure to conduct its own cumulative error analysis reflects a manifest error of law. ECF No. 222. I address each argument in turn.

   A.   **Consideration of evidence from second state postconviction proceeding**

In the Merits Order, I stated that I could "not consider any evidence beyond Greene's first state post-conviction record . . . because Greene cannot satisfy the stringent requirements of § 2254(e)(2)." ECF No. 220 at 7 (citing *Shinn v. Ramirez*, 596 U.S. 366, 385 (2022) (concluding "that, under § 2254 (e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel").) I explained the basis of this statement as follows: "I am prevented from considering evidence presented during Greene's second state post-conviction proceeding—and any evidence generated thereafter—because (1) I am precluded from considering evidence presented in a procedurally barred state post-conviction action, *see McLaughlin v. Oliver*, 95 F.4th 1239 (9th Cir.

2

2024), and (2) Greene's second state post-conviction action was found to be procedurally barred by the state court and the Supreme Court of Nevada affirmed that ruling." *Id*. at 7 n.3.

Greene argues that the Court was permitted to consider the evidence developed during his second state postconviction proceeding because his second state postconviction proceeding was not procedurally barred. ECF No. 222 at 12. Notably, this issue was not previously briefed by the parties.

Greene was entitled to the effective assistance of counsel during his first state postconviction proceedings due to his death sentence, *see* Nev. Rev. Stat. § 34.820(1)(a), so Greene, unlike a non-capital petitioner, was entitled to file a second state postconviction petition, wherein he could argue that the ineffective assistance of his first postconviction counsel amounted to cause to excuse the procedural default of his second postconviction petition. *See Crump v. Warden*, 934 P.2d 247 (Nev. 1997). Greene did just that, and the Supreme Court of Nevada determined that Greene's second state postconviction petition was timely filed. *See* ECF No. 111-4 at 5–6. Accordingly, Greene's second state postconviction petition—and the evidence presented in support of that petition—was presented to the Nevada state court and Nevada appellate court in compliance with Nevada's procedural rules. Therefore, because the Court is permitted to consider the evidence developed during Greene's second state postconviction proceedings (*see* ECF Nos. 132-1 through 141-1), I grant the Motion in this respect and will reconsider grounds 1d and 2c.

### B. Denial of grounds 1a and 1d

In ground 1a, Greene alleged that his trial counsel failed to investigate and discover evidence of his life history. ECF No. 119 at 17. I found that Greene's trial counsel could have done a more thorough job investigating Greene's history, but I denied relief because Greene failed to demonstrate prejudice. ECF No. 220 at 11. My prejudice analysis was based on (1) the jury having heard the major highlights of Greene's childhood traumas from his adoptive father's and mother's testimonies at the penalty hearing, (2) a deeper understanding of Greene's history not having

provided explanatory mitigating evidence, and (3) Greene's mitigating evidence having contrasted sharply with the strength of the aggravating circumstances. *Id.* at 11–12.

Greene argues that the second prejudice basis requiring a nexus between the mitigating evidence and his offense was erroneous. ECF No. 222 at 27–31. Greene misreads my analysis. I never stated that he was *required* to show a nexus between the mitigating evidence and his crimes to prove prejudice. Rather, I stated that "it [was] rare that habeas relief [would be] granted" in that situation. ECF No. 220 at 11.

Greene also argues that the third prejudice basis reflects a manifest error of law and fact because it overstates the aggravated nature of the offense in this case. ECF No. 222 at 31–32. I described "the horrifyingly violent evidence in aggravation" as the "remorseless and excessive[ly] cruel[ ] . . . killing [of] two innocent victims for no reason." ECF No. 220 at 12. I did not mean to imply by this description that Greene was necessarily precluded from a sentence of life rather than death, as he contends. I also did not give more weight to the aggravating evidence than permitted, as Greene also contends. Instead, I earnestly described the evidence in aggravation in conducting a reweighing of the aggravating and mitigating evidence.

I deny the Motion regarding ground 1a. And because I have already determined that reconsideration of ground 1d is warranted, Greene's related arguments regarding ground 1d's prejudice analysis are moot.

**C. Intervening authority regarding grounds 3 and 8**

In ground 3, Greene alleged that the State failed to disclose material exculpatory and impeachment information and presented false testimony related to benefits that were promised to and conferred upon Anthony Fisher.[1] ECF No. 119 at 147. And in ground 8, Greene alleged that the trial court refused to allow impeachment of Heather Barker with her lie under oath in an unrelated criminal matter that she did not use drugs. *Id.* at 232, 236.

---

[1] Fisher testified that Greene told him "[t]hat [Greene] had murdered two people" on Sunrise Mountain. ECF No. 39-3 at 14. When Fisher asked Greene why he murdered the two people, Greene said that "[h]e didn't know, [he] just did it." *Id.* at 14. Fisher testified that Greene did not "exhibit any signs of remorse or emotion." *Id.* at 15.

       I denied ground 3 because Greene failed to demonstrate materiality related to Fisher given that Barker's testimony that Greene killed the victims after driving by them by happenstance and laughed after the killings was even more compelling than Fisher's testimony, making Fisher's testimony not especially critical to the prosecution's case. ECF No. 220 at 27. And I denied relief in ground 8 because the exclusion of the impeachment evidence related to Barker fell short of rising to a due process violation given that (1) Greene's trial counsel was able to cross-examine Barker on the reliability of her testimony as it related to her drug usage, and (2) "[t]he fact that Barker may have lied under oath about her general drug usage in another case may have slightly affected her overall trustworthiness . . . , but, given that the lie was trivial, had nothing to do with the facts of the unrelated case, was cursory, and was made in a proceeding completely unconnected to Greene's case, it cannot be determined that the jury did not have sufficient information upon which to assess Barker's credibility." *Id.* at 52–53.

       Greene argues that these holdings are at odds with the Supreme Court's recent decision in *Glossip v. Oklahoma*, which, relevantly, (1) articulated that the bar for proving materiality under *Napue* is lower than that applied by this Court in ground 3, and (2) explained that correcting a key witness's dishonest testimony was critical because it would have revealed to the jury that the witness was willing to lie to them under oath, meaning Barker's willingness to lie was more than mildly relevant. ECF No. 222 at 37–42.

       Addressing ground 3 first, *Glossip* provided, in relevant part, as follows: "Because [the witness's] testimony was the only direct evidence of Glossip's guilt of capital murder, the jury's assessment of [the witness's] credibility was necessarily determinative here. Beside [the witness], no other witness and no physical evidence established that Glossip orchestrated [the victim's] murder. Thus, the jury could convict Glossip only if it believed [the witness]." 604 U.S. 226, 248 (2025). Respondents argue that this case is distinguishable from *Glossip* because here Fisher's testimony was not the sole testimony that demonstrated that Greene lacked remorse or that the killings were random. ECF No. 230 at 9. I agree. Even if Barker's veracity was at issue here too, as

5

Greene points out in rebuttal, the jury's assessment of Fisher's and Barker's credibility was not necessarily determinative here of whether Greene committed the murders by random and without remorse. The jury could have reasonably come to these findings based on the facts of the murders alone.

Turning to ground 8, *Glossip* provided, in relevant part, as follows: "Had the prosecution corrected [the witness] on the stand, his credibility plainly would have suffered. That correction would have revealed to the jury not just that [that witness] was untrustworthy . . . , but also that [he] was willing to lie to them under oath. Such a revelation would be significant in any case." 604 U.S. at 248–49. *Glossip* deals with the suppression of impeachment evidence, which was not the issue in ground 8. Further, I reviewed ground 8 through AEDPA's deferential standard of review, meaning my review of ground 8 could not be based on a decision that had yet to be issued at the time the Supreme Court of Nevada decided the issue. *See Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (stating that state-court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decision").

I deny the Motion as to grounds 3 and 8.

D. *Loper Bright* and a less restrictive form of AEDPA deference

Greene argues that the recent United States Supreme Court decision in *Loper Bright Enterprises v. Raimondo* establishes that (1) the extreme deference adopted by the majority in *Williams v. Taylor*, 529 U.S. 362 (2000) is unconstitutional, (2) *Loper Bright*'s separation of powers reasoning mandates that *Williams* deference be found an unconstitutional impingement upon federal court authority, and (3) *Williams* deference is not a mere remedial limitation placed upon federal courts. ECF No. 222 at 45–51. In *Loper Bright*, the Supreme Court overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), dealing with the deference owed to agency interpretations of ambiguous statutes. 603 U.S. at 378–79.

While I may prefer to exercise my independent judgment on questions of federal constitutional law, I am bound to follow controlling Supreme Court precedent until it has been explicitly overruled by that Court. *United States v. Werle*, 35 F.4th 1195, 1201 (9th Cir. 2022) ("We are 'bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court.'" (quoting *Nunez-Reyes v. Holder*, 646 F.3d 684, 693 (9th Cir. 2011) (en banc))). And here the Supreme Court did not explicitly (or implicitly) overrule or dilute AEDPA deference in *Loper Bright*—in fact, *Loper Bright* did not discuss AEDPA or *Williams*. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) ("If a precedent of this Court has direct application in a case, . . . a lower court should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decision. This is true even if the lower court thinks the precedent is in tension with some other line of decisions." (Internal quotation marks and citation omitted).) Rather, the Supreme Court has recently confirmed AEDPA's constitutionality. *See Brown v. Davenport*, 596 U.S. 118, 127 (2022) ("When Congress supplies a constitutionally valid rule of decision, federal courts must follow it. In AEDPA, Congress announced such a rule.").

I deny Greene's Motion in this regard.

### E. Denial of ground 9

In ground 9, Greene alleged that the admission of several overly prejudicial photographs of the victims' bodies deprived him of a fair trial. ECF No. 119 at 237. Although finding that "[t]he introduction of the photographs was undoubtedly detrimental to Greene," I found it could not "be concluded that the admission of these photographs rendered Greene's trial fundamentally unfair in violation of due process." ECF No. 220 at 56. This latter finding was based on the photographs having been "admitted for the permissible purpose under Nevada law of assisting Dr. Jordan in explaining—and the jury in understanding—the cause and circumstances of the victims' deaths" because "photographs enhance jurors' perceptions and convey a message more effectively than a mere verbal description." *Id*. I also stated that "the Supreme Court 'has not yet made a ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient

to warrant issuance of the writ.'" *Id*. at 56–57 (quoting *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009)).

First, regarding my statement quoting *Yarborough*, Greene and Respondents agree that this is no longer good law following the Supreme Court's recent decision in *Andrew v. White*, 604 U.S. 86, 96 (2025) ("[I]t [is] clear that the introduction of unduly prejudicial evidence could, in certain cases, violate the Due Process Clause."). ECF Nos. 222 at 54; 230 at 11–12.

Second, Greene argues that my holding represents a manifest error of law because "the correct standard is whether the admission of the evidence rendered the trial arbitrary and fundamentally unfair." ECF No. 222 at 52. I did not find that Greene was not entitled to relief because the pictures were helpful to the jurors, as Greene appears to interpret my Merits Order. Rather, I applied the correct standard, assessing whether admission of the photographs rendered Greene's trial fundamentally unfair. My discussion about the photographs being visual aids to the pathologist's testimony was merely included to explain that the photographs were used as tools to help the jury understand the facts of the crime rather than, for example, being merely used to shock and pull at the emotions of the jurors. *See Lisenba v. People of the State of California*, 314 U.S. 219, 228–29 (1941) ("The fact that evidence admitted as relevant by a court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of due process.").

I grant the Motion in regard to *Andrew*, but I deny the Motion as to my ultimate conclusion that Greene failed to demonstrate that the photographs rendered his trial fundamentally unfair.

F. *Batson* claim and improper speculation

In ground 11e, Greene alleged that his trial counsel failed to make appropriate *Batson* challenges. ECF No. 119 at 300. In denying this ground, I stated that Greene failed to demonstrate that raising such requests would have been fruitful. ECF No. 220 at 64. This denial was based on the following reasoning: "Because the prosecution would have been able to present race-neutral explanations for striking Prospective Jurors Henderson and Bingham—Prospective Juror

8

Henderson not believing she could judge whether someone else should live or die and Prospective Juror Bingham being previously arrested for domestic violence and omitting such information from his jury questionnaire—it would have been futile for Greene's trial counsel to have raised a *Batson* challenge." ECF No. 220 at 65. Greene argues that it was manifest error under *Batson* for me to have hypothesized reasons for the prosecutor's strike. ECF No. 222 at 57. I made no such hypotheses. Rather, my denial was based on the record: the prosecutor challenged both prospective jurors for cause, giving specific race-neutral reasons. Just because those race-neutral reasons were not repeated when the prosecutor later exercised peremptory challenges on these same jurors does not mean that I engaged in improper assumptions. Further, my fruitfulness analysis here was under *Strickland*'s prejudice prong, not *Batson*.

I deny the Motion as to ground 11e.

### G.  Cumulative error analysis

In ground 13, Greene alleged that there were cumulative errors. ECF No. 119 at 307. I denied this ground, finding, in part, that the Supreme Court of Nevada's "determination [was] a reasonable application of clearly established federal law." ECF No. 220 at 72. Greene argues that this holding represents a manifest error of law because the Supreme Court of Nevada's cumulative error analysis was incomplete given that it did not consider the entirety of Greene's claims within that analysis, meaning this Court failed to conduct its own cumulative error analysis independent of the Supreme Court of Nevada's ruling. ECF No. 222 at 58–60. However, in addition to finding that the Supreme Court of Nevada's cumulative error analysis of Greene's direct appeal claims was reasonable, I also conducted my own overall cumulative error analysis. In the Merits Order, I found "that the cumulation of any errors . . . did not amount to Greene's trial being unfair, prejudicial, or a denial of due process." ECF No. 220 at 72.

I deny the Motion as to ground 13.

III.     Conclusion

It is therefore ordered that the motion to amend **[ECF No. 222] is granted in part,** as described in this order.

It is further kindly ordered that the Clerk of the Court vacate the Merits Order [ECF No. 220] and Judgment [ECF No. 221].

An Amended Merits Order will be issued in due time.

Dated: December 29, 2025

_____
Cristina D. Silva
United States District Judge